**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **INDICTMENT NO.:** |
| | **1:12-CR-00328-TCB-LTW-2** |
| **v.** | |
| | |
| | |
| **BONAFACIO CRUZ,** | |
| **Defendant,** | |

**<u>DEFENDANT'S PRELIMINARY MOTION TO SUPPRESS
INTERCEPTED COMMUNICATIONS</u>**

**COMES NOW** Defendant above-named, by and through undersigned counsel, and pursuant to 18 U.S.C. § 2518(10)(a)[1] moves to suppress any and all intercepted communications obtained as a result of the wiretaps utilized during the investigation of this case on "Target Telephones" (hereinafter "TT"). In support of this Motion, Defendant shows as follows:

**<u>THE RIGHT TO FURTHER PARTICULARIZE THIS MOTION</u>**

Defendant files this preliminary motion to suppress

---

[1] 18 U.S.C. § 2518(10)(a) provides in pertinent part, as follows:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication...".

L. DAVID WOLFE, P.C. • 101 MARIETTA STREET SUITE #3325 • ATLANTA, GEORGIA 30303
TELEPHONE 404.352.5000 • FACSIMILE 404.524.2467

1

any evidence and/or information illegally obtained from the wiretaps and Global Positioning devices, however, as he has not yet received any discovery in his case, Defendant reserves the right to amend and further particularize his motion upon receipt of the discovery due to him.

I. **STANDING**

Defendant has standing to contest the legality of any and all interceptions of wire/oral communications obtained in this case in that:

He is an "aggrieved" person pursuant to 18 U.S.C. § 2511, as he was the "subject of, an alleged participant in or a party to intercepted communications." See, e.g. H.Rep. No. 1549, 91st Cong. 2d Sess.; United States v Tucker, 526 F.2d 279, 282 & N. 4 (5th Cir. 1976) (a cognizable "claim" need be no more than a "mere assertion," provided that it is a positive statement that interception was illegal); United States v Pacella, 622 F.2d 640 (2d Cir. 1980); United States v Williams, 580 F.2d 578 (D.C. Cir. 1978).

Defendant's rights derive from the statutory language of 18 U.S.C. § 2510(11), which reflects that in addition to those

whose voices are identified on the wiretapped conversations, that "a person against whom the interception was directed" also has standing to challenge the tap.

The applications and authorizations with regard to these wiretaps list specific individuals among the interceptees targeted and a group designated as "others yet unknown". In the applications for these wiretaps, the context within which the term "others yet unknown" is utilized, is to include members of the drug distribution organization targeted by the taps who have yet to be identified but are anticipated to be intercepted on the taps. As such, these unknown individuals are members of the group "against whom the interception[s] are directed."

Where the defendant is a member of the target organization, he is sufficiently connected with that group to challenge the wiretaps used in the prosecution against him. See United States v. Scasino, 513 F.2d 47, 50 (5th Cir. 1975).

II. **REQUIREMENTS ON INTERCEPTION OF PRIVATE COMMUNICATIONS**

   a. **Statutory Framework**

The fundamental notion behind all wiretapping statutes, whether state or federal, is the protection of privacy rights of citizens from unwarranted invasions by government (or private)

intrusions.   To protect that "fundamental" right, both federal and state governments have erected statutory barriers to the interception of presumptively private conversations.

To that end, in 1968 Congress passed Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521, to conform to the constitutional standards governing wiretaps prescribed by the Supreme Court in <u>Berger v. New York</u>, 388 U.S. 41 (1967), and <u>Katz v. United States</u>, 389 U.S. 347 (1967).   That Act, as amended, requires (at a minimum) the following: a full and complete statement of the alleged offense, the facilities where the communications are to be intercepted, a particular description of the communications sought to be intercepted, the identity of the persons committing the offense and of persons whose communications are to be intercepted, a full and complete statement of whether or not other investigative procedures have been tried and failed or why they appear to succeed or are too dangerous, and a full and complete statement of the period of time for which the interception is to be maintained.   <u>See</u>, <u>e.g.</u> 18 U.S.C. § 2518(1)(c) and 3(c), <u>United States v. Kahn</u>, 415 U.S. 143, 153, n. 12 (1974); <u>United States v. Giordano</u>, 416 U.S. 505 (1974).   Additionally, all applications must include information concerning previous

applications involving any of the same persons, facilities or places. 18 U.S.C. § 2518(1)(e).

If presented with an appropriate application, a court may actually issue a surveillance order for interception of private communications only if it finds probable cause[2] to believe that (1) a person is committing one of the crimes enumerated in Title III, (2) communications concerning such an offense will be obtained through interception, and (3) the facilities from which the communications are to be intercepted are being used in connection with the offense. 18 U.S.C. § 2518 (3)(1), (b) and (d).[3]

If the requirements are met, a court may issue an order specifying the identity of the person whose communications are to be intercepted, 18 U.S.C. § 2518(4)(a), and the nature and location of the communications facilities or the place where the interception will occur. 18 U.S.C. § 2518(b). The order must also specify the type of communication to be intercepted, the

---

[2] The probable cause standard is the same as that used in ordinary search warrants. See United States v. McHale, 495 F.2d 15 (7th Cir. 1974); United States v Wagner, 989 F.2d 69, 71 (2d Cir. 1993). United States v Green, 40 F.3d 1167 (11th Cir. 1994).

[3] Of course, the Court must find that normal investigative techniques have failed, see infra.

particular crime to which it relates, and the length of authorized interception. 18 U.S.C. § 2518(4)(c) and (e).

The order itself must be executed "as soon as practicable" and "terminate upon attainment of the authorized objective". 18 U.S.C. § 2518(5). Periodic progress reports may also be required. <u>See</u>, 18 U.S.C. § 2518(6); <u>United States v Van Horn</u>, 789 F.2d 1492, 1499 (11th Cir. 1986).

Post-authorization duties attendant to the execution of an interception warrant include, *inter alia*, minimization[4], and timely sealing.[5]

Finally, Title III must be strictly construed in favor of privacy interests because Congress intended Title III's procedural controls to be a "pre-condition to the acceptability of any wiretapping at all."[6]

The individual affidavits in this case fail to meet the necessary requirements to authorize Title III wiretaps of the TT's for the following reasons:

---

[4]  18 U.S.C. § 2518(5); <u>United States v Moody</u>, 977 F.2d 1425 (11th Cir. 1992).
[5]  18 U.S.C. § 2518(8)(1) and (b); <u>United States v Ojeda Rios</u>, 495 U.S. 257 (1990).

[6]  The foregoing intricate and well-thought out process may be totally disregarded should the government obtain authorization from the President if he believed a wiretap in this matter is necessary to win the war on terror.

### b. **Necessity Requirement Was Not Met**

The Applications and Affidavits for the wire interception Warrants/Orders fail to satisfy 18 U.S.C. §§ 2518(1)(c) and (3)(c). The Affidavits do not contain a "full and complete statement as to whether other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(1)(c).

Title III contains a "necessity" requirement, separate and distinct from its probable cause requirement, which must be satisfied before a wiretap order may be lawfully issued. The purpose of the "necessity" requirement is "to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" United States v. Edwards, 69 F.3d 419, 429 (10th Cir. 1995) (quoting United States v. Kahn, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 (1974). Pursuant to this requirement, each application for an order authorizing interception "shall include...a full and complete statement..." regarding other investigative procedures and any alleged danger. See 18 U.S.C. § 2518(1)(c).

Any judge reviewing a wiretap application must *independently* determine that the requested wiretap is necessary.

In describing just what the "other investigative procedures" envisioned by Title III are, the Ninetieth Congress noted that:

> [n]ormal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants.

Senate Comm. on The Judiciary Report on the Omnibus Crime Control and Safe Streets Act of 1968, S.Rep. No. 90-1097 at 79 (1968), cited in United States v. Castillo-Garcia, 920 F.Supp. 1537, 1545 (D.Colo. 1996).

For the government to obtain an electronic surveillance order, it must "explain fully" in its application what investigative techniques have been tried, and that:

> [g]eneralities, or statements in the conclusory language of the statute, are insufficient to support a wiretap application. The statements must be factual in nature and they must specifically relate to the individuals targeted by the wiretap.

United States v. Castillo-Garcia, 117 F.3d 1179, 1188, (10th Cir. 1997).

What the Application does, *sub judice*, is conflate the Affiant's belief that there is probable cause to believe some suspects are engaged in criminal conduct, with the *particularized necessity* for a wiretap. The standard is

L. David Wolfe, P.C. • 101 Marietta Street Suite #3325 • Atlanta, Georgia 30303
Telephone 404.352.5000 • Facsimile 404.524.2467

8

*necessity*, not *investigatory utility*, and the government must demonstrate such need with specificity, not just conclusory assertions.  See also United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989) (government can't discharge its burden with "bare conclusory statements"); United States v. Leavis, 853 F.2d 215, 221 (4th Cir. 1988) ("mere 'boilerplate recitation of the difficulties of gathering usable evidence'" insufficient to carry burden, specific factual information" is necessary), United States v. Lilla, 699 F.2d 104 (2d Cir. 1983); United States v. Ippolito 774 F.2d 1482, 1486 (9th Cir. 1985); United States v. Robinson, 698 F.2d 448, 453 (D.C. Cir. 1983); United States v. McKinney, 785 F.Supp. 1214, 1220 (D. Md. 1992); United States v. Salemme, 91 F.Supp.2d 141 (D.Mass.) (1999).

In the present case, after law enforcement received authorization for the original wiretaps, they relied less and less on traditional investigative techniques such as controlled buys, attempts to infiltrate suspected drug organizations, or controlled telephone conversations by cooperating individuals. Instead, these traditional techniques were abandoned for repeated applications for wiretaps.

Where a wiretap affidavit does not establish the futility in using investigative means either already undertaken or

considered by the police, exhaustion has not occurred. United States v. Mondragon, 52 F.3d 291, 293 (10th Cir. 1995). Further, "other investigative procedures" does not include the use of other wiretapping authorizations. United States v. Bianco, 998 F.2d 1112, 1127 (2d Cir. 1993). In the instant matter, by the time the Affiant sought taps on the TT's, the investigation had abandoned all conventional investigative techniques and relied exclusively upon electronic surveillance and its derivative fruits.

Because substantial questions still exist as to the need for wiretaps in light of the unexhausted success of conventional investigative techniques, Defendant requests a Franks hearing to determine the full extent of the information gathered from the cooperation of all of the CS's; and, the extent and potential of the information and evidence that could have been realized had the conventional investigation continued. Franks v. Delaware, 438 U.S. 154 (1978). Omissions and misrepresentations under Franks apply not only to probable cause, but for exhaustion and necessity as well. United States v. Bankston, 182 F.3d 296 (5th Cir. 1999); United States v. Ippolito, 774 F.2d 1482, 1483-87 (9th Cir. 1985)(misstatement about informants being unable to

penetrate conspiracy); <u>United States v. Green</u>, 175 F.3d 822 (10th Cir. 1999).

## III. <u>CONCLUSION</u>

**WHEREFORE**, Defendant moves this Court:

(a) To suppress the use of any and all evidence obtained as a result of the wiretaps utilized in this case and the fruits thereof, <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963), as they were obtained contrary to the provisions of 18 U.S.C. §2510 *et seq.*; or,

(b) To set a date for a hearing where the government can attempt to establish how they exhausted the conventional means of investigation available to them before seeking authority to utilize wiretaps in the investigation of this case.

This the 31st day of October, 2012.

Respectfully Submitted,
<u>s/ L. David Wolfe</u>
   L. David Wolfe, P.C.
Georgia Bar No. 773325
Attorney for Defendant


<u>s/ Michael J Antoniolli</u>
   L. David Wolfe, P.C.
Georgia Bar No. 652407
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br><br>BONAFACIO CRUZ,<br>    Defendant, | &#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124;<br>&#124; | INDICTMENT NO.:<br>1:12-CR-00328-TCB-LTW-2 |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **Defendant's Preliminary Motion to Suppress Intercepted Communications** by electronically filing with the Clerk of the Court by using CM/ECF, which will automatically send email notification of such filing to the following:

**Ellen Endrizzi & Michael Herskowitz**
Assistant United States Attorney
Suite 600, Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000

This the 31st day of October, 2012.

Respectfully Submitted,
s/ L. David Wolfe
    L. David Wolfe, P.C.
Georgia Bar No. 773325
Attorney for Defendant


s/ Michael J Antoniolli
    L. David Wolfe, P.C.
Georgia Bar No. 652407
Attorney for Defendant